672 A.2d 1373

Frank A. CAPPIELLO, Marie Cappiello, Jacques J. Moore
and Lawrence G. Spiel Vogel, Appellants,

v.

Paul J. DUCA, Gabriel A. Vetare, and Paul J. Duca and Gabriel
A. Vetare, Trading as Lincoln Farm Associates.

Superior Court of Pennsylvania.

Argued Jan. 11, 1996.

Filed March 12, 1996.

Maralynne Flehner, Gulph Mills, for appellants.

Paul Duca, Philadelphia, for appellees.

Before KELLY, POPOVICH, JJ., and MONTEMURO, Senior Judge.*

MONTEMURO, Senior Judge:

This appeal arises from an order of the Philadelphia County Court of Common Pleas which denied Appellants' request for a preliminary injunction. Appellants filed a complaint in equity seeking: (1) a declaratory judgment, (2) a preliminary injunction and a permanent injunction, (3) an accounting, (4) the appointment of a custodian for the partnership, and (5) damages based on breach of contract, tortious interference with the partnership's business relations and tortious interference with the limited partners' interests. Based upon Appellants' simultaneous filing of a Petition for a Preliminary Injunction, an Accounting and an Order Appointing a Custodian, on April 28, 1995, Judge Nigro issued a rule to show cause why a preliminary injunction, an order for an accounting and an order appointing a custodian should not be granted. After an evidentiary hearing on the petition, Judge Sheppard denied Appellants' petition in all respects. This appeal follows.

In December 1974, a limited partnership agreement was executed between Kofey, Ltd., a Pennsylvania corporation, as the general partner, and various limited partners. The limited partnership, known as Lincoln Farms Associates, was formed to promote and to develop real estate. On December 18, 1980, Paul Duca, Secretary/Treasurer of Kofey, Ltd., notified the limited partners that on advice of an accountant, for tax reasons, he wished to remove Kofey, Ltd. from the general partner position and instead substitute Gabe Vetare and himself. A Certificate of Amendment to this effect was filed with the state on December 26, 1980.

Following some concern that Duca, acting as a general partner, was not promoting the interests of the partnership, Appellants, Frank Cappiello, Marie Cappiello, Jacques Moore and Lawrence Spielvogel, executed an amendment to the

* Retired Justice assigned to Superior Court.

partnership agreement. That amendment, dated October 27, 1989, provided that limited partners, holding more than fifty percent of the total capital contribution of the limited partners, would have the right to remove and replace a general partner. A majority of the limited partners, holding 72.5% of the total contribution of the limited partners, then voted to remove Duca from the position of general partner. Duca, however, refused to acknowledge the vote as binding. As a result, Vetare, acting as general partner and for the partnership, filed suit seeking an injunction to prohibit Duca from, among other things, acting as a general partner or from interfering with partnership business, from writing checks, or otherwise withdrawing funds from the partnership account. On June 22, 1990, the Court of Common Pleas of Philadelphia County granted Vetare's motion for a preliminary injunction only with respect to requiring Duca to turn the checkbook over to Vetare and prohibiting Duca from withdrawing any partnership funds. Vetare did not further prosecute the other issues and ultimately, the suit was non-prossed.

Nonetheless, Duca continued to assert that his removal from general partner status was invalid. In October 1991, Vetare assessed a real estate tax on the limited partners' interests so that the partnership could pay its real estate taxes. Duca, continuing to assert his position as a general partner, notified Vetare that the assessment was invalid since it had not been authorized by Duca. Accordingly, Duca refused to pay the assessment.

From the end of 1991 until the beginning of 1993, Vetare conducted the operations of the partnership without much interference from Duca. However, in April of 1994, Duca executed and filed an amendment to the partnership certificate. That amendment purported to make null and void the amendment executed by the limited partners enabling a majority of the limited partners to remove and replace a general partner. Duca did not notify the limited partners of this amendment. Within months, however, the limited partners discovered the amendment and demanded that Vetare file an amendment to remove Duca. Vetare, however, refused. In

fact, on February 22, 1995, Vetare and Duca filed an amendment which indicated that they were both general partners, and further, specifically ratified the April 1994 amendment which Duca had filed declaring the removal amendment null and void. Based on this conduct, on April 17, 1995, Appellants filed this present action.

The trial court conducted a two day evidentiary hearing on Appellants' request for a preliminary injunction. At the conclusion of that proceeding, the trial court denied relief, concluding that Appellants had failed to establish (1) that they were suffering from irreparable harm, (2) that they did not have an adequate remedy at law, and (3) that they would be exposed to greater harm than the Appellees would be if Appellants' requested relief was not granted.

Appellants raise the following issues on appeal:

I. Does the record reasonably support the lower court's order denying Appellants' petition for a preliminary injunction on the grounds that they failed to demonstrate immediate, irreparable harm, an adequate remedy at law, that greater injury will result from denying the injunction than from granting it, and that the entry of an injunction will restore the parties to the last actual, lawful, noncontested status quo?

II. Did the lower court misapply the rule of law governing irreparable harm by failing to recognize that the violation of an express statutory provision and/or the existence of repeated, continuing wrongs and/or the absence of an adequate remedy at law constitute irreparable harm?

III. Did the lower court misapply the law governing lack of an adequate legal remedy?

IV. Did the lower court misapply the rule of law governing the requirement that the party seeking an injunction demonstrate that more harm will result from denying the injunction than from granting it by failing to recognize that when the preservation of or injury to an established right is in issue it is not appropriate to balance hardships, and/or by failing to recognize that when an express statutory provision

is being violated the balance of hardships tips in plaintiffs' favor as a matter law?

 The standard for reviewing a request for a preliminary injunction is well settled. Our Supreme Court recently reiterated the standard as follows:

first, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct ... Even more essential however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded.

*School District of Wilkinsburg v. Wilkinsburg Education Association*, 542 Pa. 335, 338, 667 A.2d 5, 6 (1995) (citing *New Castle Orthopedic Associates v. Burns*, 481 Pa. 460, 464, 392 A.2d 1383, 1385 (1978)). Therefore, it is clear that a preliminary injunction may be granted only when the moving party sufficiently carries the burden to establish the following five elements:

(1) that relief is necessary to prevent immediate and irreparable harm which cannot be compensated by damages; (2) that greater injury will occur from refusing the injunction than from granting it; (3) that the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful conduct; (4) that the alleged wrong is manifest, and the injunction is reasonably suited to abate it; and (5) that the plaintiff's right to relief is clear.

*Lewis v. City of Harrisburg*, 158 Pa.Commw. 318, 324, 631 A.2d 807, 810 (1993). Moreover, it must be remembered that a preliminary injunction is an extraordinary, interim remedy to be granted only upon a clear right to relief in order to preserve the status quo pending resolution of the case on the

merits. *DiLucente Corp. v. Pennsylvania Roofing,* 440 Pa.Super. 450, 455, 655 A.2d 1035, 1037 (1995).

▮ Furthermore, it is also settled that when reviewing a denial of a preliminary injunction on appeal,

> "[the] appellant has a very heavy burden to overcome; such a decree will not be interfered with upon appellate review in the absence of a plain abuse of discretion by the court below." *Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 577–78, 345 A.2d 664, 670 (1975) (citations omitted). "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor." *Roberts v. Board of Directors of the School District of Scranton,* 462 Pa. 464, 469, 341 A.2d 475, 478 (1975) (citations omitted).

*Psi Upsilon v. University of Pennsylvania,* 404 Pa.Super. 604, 608, 591 A.2d 755, 757–58, *allocatur denied,* 528 Pa. 637, 598 A.2d 994 (1991) (quoting *Boehm v. University of Pennsylvania School of Veterinary Medicine,* 392 Pa.Super. 502, 505–506, 573 A.2d 575, 577 (1990)). Essentially, we need only determine whether there are any apparently reasonable grounds for the trial court's action on the request for a preliminary injunction. *Giant Eagle Markets v. Food & Commercial Union,* 539 Pa. 411, 423, 652 A.2d 1286, 1291 (1995). Because our scope of review on a denial of a preliminary injunction is narrow, we will overturn the decision of the Chancellor only when an appellant demonstrates that the trial court clearly abused its discretion or committed an error of law. *DiLucente Corp.,* 440 Pa.Super. at 456, 655 A.2d at 1038. Accordingly, in light of these standards, we shall proceed to address Appellants' contentions.

▮ Prior to addressing whether there are any reasonable grounds for the Chancellor's denial of Appellants' request for a preliminary injunction, we shall begin our analysis by addressing Appellants' contention of legal errors. To begin with, Appellants argue that the trial court misapplied the rule of law governing irreparable harm, particularly in light of alleged statutory violations. Appellants contend that Vetare

and Duca, individually and together, are violating numerous provisions of the Pennsylvania Revised Uniform Limited Partnership Act, 15 Pa.C.S. §§ 8505—8594, (PRULPA), and the Uniform Partnership Act, 15 Pa.C.S. §§ 8301—8365, (UPA), and as such, those violations are per se considered to constitute immediate and irreparable harm.

While our Supreme Court has recognized that statutory violations are sufficiently injurious to constitute irreparable harm, *see Pennsylvania Public Utility Commission v. Israel*, 356 Pa. 400, 406, 52 A.2d 317, 321 (1947) (wherein the Supreme Court noted that when conduct proscribed by a statute is continued, such conduct constitutes irreparable injury); *Save Our School v. Colonial School District*, 156 Pa.Commw. 671, 677 n. 5, 628 A.2d 1210, 1213 n. 5 (1993) (Commonwealth Court, citing *Hempfield School District v. Election Board of Lancaster County*, 133 Pa.Commw. 85, 574 A.2d 1190, *allocatur denied*, 525 Pa. 650, 581 A.2d 575 (1990), stated that "a violation of a statute per se constitutes immediate and irreparable harm justifying the issuance of a preliminary injunction."), in this case, it is not clear that any provisions of the PRULPA or the UPA are being violated. Appellants begin their argument on this point by noting that in 1989, 72.5% of the limited partners amended the partnership agreement, and consistent with that amendment, removed Duca from his position of general partner. Essentially, Appellants' entire argument is premised upon the 1989 removal of Duca.

Our legislature has provided the methods by which a limited partnership is created, 15 Pa.C.S. § 8511 (a limited partnership is formed by filing a Certificate of Limited Partnership), and the methods by which a certificate of limited partnership may be amended, 15 Pa.C.S. § 8512. Section 8512 states that:

(a) **General rule.**—A certificate of limited partnership is amended by filing a certificate of amendment thereto and ... a certificate of summary of record in the Department of State.

The certificate of amendment shall set forth:

(1) The name of the limited partnership.

(2) The date of filing of the original certificate.

(3) The amendment to the certificate.

(4) If the amendment is to be effective on a specified date, the hour, if any, and the month, day and year of the effective date.

**(b) Events requiring amendment.**—An amendment to a certificate of limited partnership shall be filed upon the occurrence of any of the following events:

(1) A change in the name of the limited partnership.

(2) The admission of a new general partner.

(3) The withdrawal of a general partner.

*　　*　　*　　*　　*　　*

**(e) Effectiveness of certificate of amendment.**—Upon the filing of the certificate of amendment in the department or upon the effective date specified in the certificate of amendment, whichever is later, the certificate of amendment shall become effective and the certificate of limited partnership shall be deemed to be amended accordingly.

Consequently, in order for an amendment to the certificate to be valid, it must be filed with the State. The trial court specifically found that "[the] amendment, enacted by a majority of the limited partners, [which] purported to remove Duca as a general partner and strip him of his power of attorney ... was never filed in Harrisburg with the state office." *Cappiello v. Duca*, No. 1724 Civil Division, slip op. at 3 (C.C.P. Philadelphia, August 16, 1995). As such, a factual dispute exists as to whether the 1989 amendment validly removed Duca from the general partner position. Accordingly, Appellants have not clearly established a statutory violation.[1] The trial court did not misapply the law with respect to immediate and irreparable harm as suggested by Appellants.

---

**1.** As an alternative theory, Appellants also argue that the trial court erred by refusing to recognize that repeated violations of statutory and contractual rights constitutes irreparable harm. Because the alleged violations are not clear as a result of the factual dispute with respect to the removal amendment, this argument too must fail.

■ Next, Appellants argue that the trial court erred by concluding that they had not established that they did not have an adequate remedy at law. Appellants again focus on the alleged statutory violations, contending that in essence, the law presumes that infringement of statutory rights cannot adequately be compensated at law. Appellants have not established that Appellees have violated any statutory provisions, and as such, their argument must fail. In their complaint in equity, Appellants have, in fact, sought damages based on breach of contract, tortious interference with the partnership's business relations and tortious interference with the limited partners' interests. If, on the merits, Appellants are able to prove that the removal amendment was valid and that Duca and Vetare acted improperly in light of that amendment, a legal remedy would be available for any mishandling of the partnership.

■ Appellant also argues that the trial court committed an error of law by balancing the hardships in deciding whether to grant Appellants' requested preliminary injunction. Instead, Appellants contend that the law requires that when an established right is being violated, the Court should not balance the hardships. In *Kanefsky v. Dratch Construction Co.*, 376 Pa. 188, 101 A.2d 923 (1954), our Supreme Court noted that "[e]ven though greater injury may result from granting than refusing an injunction, a plaintiff is entitled thereto if the defendant's act is tortious." Consistent with this principal, this Court has noted that it would be inappropriate for an individual to complain that he will suffer by being prohibited from committing tortious acts against another. *Weiss and Maen v. Greenberg*, 101 Pa.Super. 24 (1930). This is simply not the case in this action, and as such, the general rule which requires the court to balance the potential harm to each side was appropriately employed by the trial court.[2]

2. We note that as an alternative argument on this point, Appellants contend that even if the general rule is applied, they sufficiently have carried their burden to show that the harm will be greater to them if the preliminary injunction is not granted. Appellants base their conclusion on the premise that when statutory provisions are being violated, it is presumed that greater injury results from refusing the injunction than

Consequently, believing that the trial court did not commit any errors of law, we shall proceed to review whether there are any apparently reasonable grounds in the record to support the common pleas court's denial of the preliminary injunction.

■ Based upon our review of the record, we believe that the trial court did, in fact, properly refuse to issue a preliminary injunction. The court concluded that this partnership dispute has been ongoing since 1989. In that year, a majority of the limited partners attempted to amend the partnership agreement and thereafter, consistent with the amendment, strip Duca of his position as general partner. However, notwithstanding that the partnership agreement itself[3] and 15 Pa.C.S. § 8512 require that any amendments be filed with the State, the attempted amendment was never filed. In April of the next year, Vetare, in the name of the partnership, filed suit against Duca seeking preliminary and permanent relief, including the return of the partnership books and records; enjoining Duca from withholding partnership information; enjoining Duca from continuing to serve as a general partner and from otherwise exercising control over the management of the partnership; enjoining Duca from receiving any payments from the partnership; and enjoining Duca from issuing partnership checks or otherwise withdrawing partnership funds. Addressing the partnership's petition for preliminary injunction, the court of common pleas granted the injunction

> to the extent that the checkbook of Lincoln Farm Associates, and the authority to draft checks in the ordinary course of business is transferred from Paul J. Duca to Gabriel Vetare, on behalf of Lincoln Farms Associates, and Paul J. Duca is hereby restrained from withdrawing any funds from Lincoln Farm Associates.

from granting the injunction. As we have already recognized, however, Appellants have not established a clear right to relief on the basis of alleged violations of the UPA or the PRULPA.

3. Paragraph 23, subsection (b) of the Limited Partnership Agreement requires that if the partnership agreement is amended, "the Certificate of Limited Partnership shall also be amended if necessary to reflect such change."

*Vetare t/a Lincoln Farms Associates v. Duca,* No. 3341 Civil Action—Equity (C.C.P. Philadelphia, June 22, 1990). After that preliminary award, the suit was not pursued and eventually, the suit was dismissed.

The record reveals that from the time of the 1989 attempt to remove Duca to the present, Duca has never recognized the amendment as valid or binding. In fact, while at times not actively filing certificates of amendment with the state, Duca maintained his opinion that the 1989 amendment was invalid, and as such, he maintained his position as general partner.[4]

4. Further evidence to support the trial court's conclusion that Appellants have not established a clear right to immediate relief can be found in Vetare's testimony with respect to a November 6, 1991, letter in which Duca's counsel requested that Vetare sign a Certificate of Amendment which notes that Paul J. Duca and Gabriel A. Vetare are the General Partners of Lincoln Farms Associates. The testimony is as follows:

> Q: And, this is a letter from Mr. Duca's counsel to you enclosing a Certificate of Amendment showing that Paul Duca is a general partner, is that right?
> A: That's correct.
> Q: You didn't sign this either, did you?
> A: No, I didn't.
> Q: And you didn't sign it because you knew that Mr. Duca was not a general partner, is that correct?
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> A: No, that is not correct.
> Q: Why did't you sign it?
> A: I didn't sign it because I was under the impression from what the court had adjudicated that Mr. Duca was still a general partner. I could not send something to the state saying that he wasn't.

(N.T. 5/10/95 at 60.) Moreover, at a partnership meeting held in December of 1991, Vetare informed the limited partners that a certificate of amendment needed to be filed when any material changes concerning the partnership had been made, i.e., a change in the partners. Vetare testified, however, that he never filed a certificate of amendment giving notice of Duca's withdrawal. (N.T. 5/10/95 at 68.) The trial court inquired "So why didn't you call [the partners] together, and why don't we make these very bright people sit down, and vote Duca is either in, or out?" Vetare responded: "Well it went on over the years." (N.T. 5/10/95 at 75.) Additionally, the Court asked Vetare why he had done nothing about Duca's 1994 amendment which purported to declare the 1989 amendment null and void. Vetare noted that he believed that Duca was still a general partner and further stated that "I didn't understand the villification, if you will, of an individual who had been doing nothing but assisting me for two years prior to this

Appellants would have this Court believe that today there is an urgent need to grant the requested relief in order to prevent immediate and irreparable harm, particularly in light of the 1994 amendment filed by Duca and the February 1995 ratification of that amendment filed by Duca and by Vetare. Nevertheless, based upon our review of the record, we believe that the record contains adequately reasonable grounds to support the trial court's conclusion that this case does not possess a compelling sense of immediacy or urgency to justify a preliminary injunction, especially in light of the "fact that the plaintiffs have essentially stood by until very recently as Duca maintained his general partnership status." *Cappiello v. Duca,* No. 1724, Civil Division, slip op. at 3 (C.C.P. Philadelphia, August 16, 1995).[5]

Accordingly, the order of the Philadelphia Court of Common Pleas is affirmed.

[1994]. I could call [Duca] up, and he would fax something to Larry [Speilvogel] as far as a contract." (N.T. 5/10/95 at 89.)

5. Because we note that Appellants were required to prove each of the elements necessary to obtain a preliminary injunction, in other words, the elements are cumulative, our decision on this particular element is sufficient to sustain the trial court's action. Nevertheless, we also note that our review of the record also supports the trial court's conclusion that (1) Appellants have failed to establish that greater injury will befall them if the injunction is not granted than will befall Appellees if the injunction is granted and (2) Appellants have failed to prove that if the injunction were to be granted, the parties would be restored to the status quo as it existed immediately prior to the alleged violations. In fact, because Duca has been participating as a general partner since he and Vetare were substituted for Kokey, Ltd. on December 22, 1980, it seems that Appellants, instead of seeking a return to the status quo, are attempting to litigate the issue of the validity of the 1989 amendment in an action for a preliminary injunction. We believe that this dispute is better resolved on the merits of the case.