**SUMMIT TOWNE CENTRE, INC.,
a Pennsylvania Corporation,
Appellant**

v.

**The SHOE SHOW OF ROCKY MOUNT,
INC., a North Carolina Corporation,
d/b/a Shoe Department, Appellee.**

Superior Court of Pennsylvania.

Argued July 31, 2001.

Filed Oct. 26, 2001.

Reargument Denied Jan. 4, 2002.

issues raised by Appellant.

Wallace J. Knox, Erie, for appellant.

Gerald J. Stubenhofer, Pittsburgh, for appellee.

Before: CAVANAUGH, EAKIN and JOYCE, JJ.

JOYCE, J.

¶ 1 Appellant, Summit Towne Centre, Inc., appeals from the June 28, 2000 order, entered in the Court of Common Pleas of Erie County, denying its petition for a preliminary injunction. We reverse. The relevant facts and procedural history are as follows.

¶ 2 Appellant owns and operates Summit Towne Centre, a 550,000 square foot shopping center consisting of a number of retail establishments and business offices. Summit Towne Centre has between twenty and thirty tenants, including a number of anchor stores such as K–Mart, Giant Eagle, Sam's Club and Staples. It is located in

Erie's "premier shopping district" and is known in the industry as a "power center or regional super center." N.T. Preliminary Injunction Hearing, 5/31/00 at 10, 43.

¶ 3 Pursuant to its leasing scheme for Summit Towne Centre, Appellant strives to maintain an appropriate tenant mix and strategically seeks tenants for specific locations. On August 21, 1992, Appellant entered into a leasing agreement with Appellee, The Shoe Show of Rocky Mount, Inc., for a 5400 square foot retail unit. The terms of this lease provided that Appellee pay both a minimum rent and percentage rent (based on gross sales) for a ten-year period. The lease also contained a "use" provision that states, in relevant part:

> Tenant agrees that the Demised Premises shall be occupied by no other person or entity except upon and with the written consent of Landlord [sic] first had, and *shall be used for the sole purpose of the operation of a first-class modified rack family shoe store specializing in retail sale of brand name dress, casual, sport and work shoes, as well as handbags, hosiery and other related accessories. Tenant recognizes that the specific limited use prescribed herein is a material consideration to Landlord in order that the Shopping Center will remain an appropriate tenant mix.*
>
> . . .
>
> Tenant agrees to keep its Demised Premises adequately illuminated and continuously and uninterruptedly open for business during the same days, nights and hours as any department store or stores located in the Shopping Center and at least, in any event, from the hours of 10:00 a.m. to 9:30 p.m. Monday through Saturday, and 12:00 noon to 5:00 p.m. on Sundays, and shall maintain therein a substantial stock of merchandise and a sufficient number of employees for the purpose of selling said merchandise, unless prevented from doing so by strikes, fire, casualties or other causes beyond Tenant's control. . . . *Tenant further agrees that during the entire term hereof, no part of the Demised Premises shall be abandoned or left vacant unless the Demised Premises have been destroyed by fire or other casualty.*

Exhibit A, Petition for Preliminary Injunction, Lease of August 21, 1992, at 7–8. (Emphasis added.)

¶ 4 In 1994, Appellee began contacting Appellant in an effort to negotiate an end to the 1992 lease agreement. Although Appellant consistently refused to compromise on the terms, Appellee continued to make this request in the intervening years. On or about January 4, 2000, Appellee informed Appellant of its intent to depart the premises. In a letter dated January 10, 2000, Appellant notified Appellee that it was obligated to keep its store open and to sell merchandise pursuant to the lease agreement. Appellee refused, and on January 30, 2000, it ceased to conduct its retail business in Summit Towne Centre and vacated the leased premises.[1] On February 17, 2000, Appellant filed a complaint in equity for specific performance and a petition seeking a preliminary injunction to enforce the 1992 lease. After a hearing on May 31, 2000, the lower court entered an order denying Appellant's petition for a preliminary injunction stating that Appellant had an adequate remedy at law and that the injunctive relief sought would disproportionately harm Appellee. This timely appeal followed.

¶ 5 In its brief, Appellant raises the following issues for our review:

---

1. Despite this departure, Appellee continues to pay rent per the 1992 agreement.

1. Whether the trial court abused its discretion or committed an error of law when it ruled that [Appellant] has an adequate remedy at law under the specific provisions of the lease agreement to address [Appellee's] vacation of the premises.

2. Whether the trial court abused its discretion or committed an error of law when it denied [Appellant's] request for injunctive relief to have [Appellee] occupy its leased premises because such a remedy would disproportionately harm [Appellee].

Appellant's Brief, at 4.

¶ 6 Foremost, the standard for reviewing a request for a preliminary injunction is well settled:

It is clear that a preliminary injunction may be granted only when the moving party sufficiently carries the burden to establish the following five elements:

(1) that relief is necessary to prevent immediate and irreparable harm which cannot be compensated by damages;

(2) that greater injury will occur from refusing the injunction than from granting it;

(3) that the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful conduct;

(4) that the alleged wrong is manifest, and the injunction is reasonably suited to abate it; and

(5) that the plaintiff's right to relief is clear.

*Cappiello v. Duca,* 449 Pa.Super. 100, 672 A.2d 1373, 1376 (1996) (citing *Lewis v. City of Harrisburg,* 158 Pa.Cmwlth. 318, 631 A.2d 807, 810 (1993)). Furthermore, when reviewing a denial of a preliminary injunction on appeal,

Appellant. has a very heavy burden to overcome; such a decree will not be interfered with upon appellate review in the absence of a plain abuse of discretion by the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor.

*Cappiello, supra* (citations omitted).

¶ 7 In its first issue, Appellant argues that the lower court improperly determined that Appellant had an adequate remedy at law. Appellant's Brief, at 10. Appellant contends that monetary damages cannot adequately compensate Appellant for the harm to Appellant's credibility as a commercial landlord and to Appellant's ability to attract and retain retail tenants. Appellant's Brief, at 19–21. Upon a thorough review of the preliminary injunction hearing testimony and the briefs of the parties, we agree.

¶ 8 As a preliminary matter, Appellant argues that the trial court found an adequate remedy existed at law by virtue of the liquidated damages clause in the lease. Appellant cites *Roth v. Hartl,* 365 Pa. 428, 75 A.2d 583 (1950) and *Slater v. Pearle Vision Center, Inc.,* 376 Pa.Super. 580, 546 A.2d 676 (1988) as persuasive support for the proposition that a liquidated damages provision does not preclude an equitable remedy. In the instant case, the trial court's opinion demonstrates that the trial court based its determination on the facts of record, rather than the mere existence of the liquidated damages provision. Trial Court Opinion, 9/20/00 at 3–6. Therefore, we will not discuss this formulation of the issue and find *Roth* and *Slater* irrelevant to the determination of this case.

¶ 9 A trial court will only grant a preliminary injunction where relief is necessary to prevent immediate and irrepara-

ble harm and where the aggrieved cannot be adequately compensated by damages. *Cappiello, supra.* An injury is regarded as irreparable if it will cause damage which can be estimated only by conjecture and not by an accurate pecuniary standard. *Santoro v. Morse,* 2001 Pa.Super. 223, 781 A.2d 1220 (*en banc*). *See also Boehm v. University of Pennsylvania School of Veterinary Medicine,* 392 Pa.Super. 502, 573 A.2d 575, 586 (1990), *appeal denied,* 527 Pa. 596, 589 A.2d 687 (1990). Moreover, Pennsylvania courts sitting in equity have the authority to enjoin wrongful breaches of contract where money damages are an inadequate remedy. *Santoro, supra.*

¶ 10 In the instant case, Appellant recognized the potential inadequacy of monetary damages when it created an express option in the lease to pursue a legal or equitable remedy. In the event Appellee failed to observe or perform any of the terms of the lease agreement, the lease provided:

> Landlord, Tenant and Guarantor, if any, covenant and agree, *because of the difficulty or impossibility of determining Landlord's damages,* should Tenant . . . (ii) vacate, abandon or desert the Demised Premises . . ., Landlord, at is option, shall have the right:
>
>> (a) to collect not only the fixed annual Minimum Rent and other rentals and charges herein reserved, but also to collect an additional amount equal to the total of: (1) one hundred fifteen percent (115%) of the greatest amount of any Percentage Rent payable by Tenant in any lease year as provided herein, plus (2) fifteen percent (15%) of the fixed annual Minimum Rent herein reserved, plus (3) fifteen per-

cent (15%) of all other rentals and charges herein reserved; said additional amount shall be payable for the period of Tenant's failure to do business, computed at a daily rate each and every day during such period, and such additional amount shall be deemed to be liquidated damages for such period; and/or

> (b) to treat such failure to do business as a default.

> . . .

> The rights and remedies given to Landlord by this Lease shall be deemed to be cumulative and no one of such rights and remedies shall be exclusive at law or in equity of the rights and remedies which Landlord might otherwise have by virtue of a default under this Lease . . . .

Lease of August 21, 1992, *supra* at 31. (Emphasis added.)

¶ 11 In light of this provision, Appellant presented the testimony of Gregory J. Rubino, a Vice–President of the management team of Summit Towne Centre, to demonstrate the immediate and irreparable harm caused by Appellee's premature departure and the inadequacy of the liquidated damages option.[2] Rubino testified that Appellant seeks to maintain an appropriate and complementary tenant mix that would promote "cross shopping" amongst the stores. N.T., Preliminary Injunction Hearing, 5/31/00, at 16. Appellee's presence enhanced and complemented the plaza's "soft goods" and "women's ready to wear" mix which already included Dots, Fashion Bug, Volume Shoes, and Payless Shoe Source. *Id.* Rubino also added that the economic interdependence of these stores is very important to the shopping center's success. *Id.* at 15.

---

**2.** This witness testifies from twenty years of experience in nationwide real estate development and from five years of experience in retail sales and management. N.T. Preliminary Injunction Hearing, 5/31/00, at 7–9.

¶ 12 He also testified that, when one or two tenant stores vacate the plaza, it creates "a domino effect." *Id.* at 16. Other tenants in the shopping center begin to question the landlord's determination and ability to enforce their leases. *Id.* They become concerned as to whether the center remains a viable location for their businesses. *Id.* Tenants may want to re-negotiate the terms of their lease or may refuse to renew at all. *Id.* at 17. Furthermore, customers begin to frequent competing plazas where complementary stores provide for more convenient shopping. *Id.* at 17. Specifically, Rubino testified that a tenant's departure "has a very real effect on [a shopping center], not one that [Appellant] make[s] up, one that I've just seen time and time again." *Id.* at 18. Rubino even testified that the loss of a non-anchor store causes this effect. *Id.* at 17.

¶ 13 Furthermore, Rubino testified that he has a very difficult time releasing vacancies in the shopping center. *Id.* at 37. In fact, every prospective tenant commented to Rubino about the vacancies. *Id.* In light of these inquiries, Rubino reluctantly responded that Appellant filed a lawsuit to enforce its obligation under the lease.[3] *Id.* Finally, Rubino testified that a tenant's departure damages the landlord's credibility and reputation with other leaseholders in incalculable ways. *Id.* at 46. As such, Rubino added that a monetary award could not adequately compensate Appellant for this loss. *Id.* at 47.

¶ 14 In light of Rubino's testimony, we find that relief is necessary to prevent immediate and irreparable harm to Appellant. While the harms occasioned by Appellee's departure may be difficult or nearly impossible to measure, they are not speculative as the trial court suggests. Rather, they are the very real consequences of a competitive leasing environment in Millcreek Township and a landlord's inability to assert its full rights under the lease. Furthermore, we do not find that an adequate legal remedy exists to compensate Appellant for this harm. Although the liquidated damages clause in the default provision allows Appellant to collect an increased percentage of Appellee's minimum and percentage rent, Appellant's harm does not stem from a loss of rental payments and will not be remedied by larger payments. The damage to Appellant's credibility as a current and prospective landlord and to its ability to attract satisfied customers stems from Appellee's vacancy. Only injunctive relief will restore the appropriate tenant mix, the shopping center's reputation for vitality, and Appellant's credibility with its tenants. As such, we find that the trial court abused its discretion when it found that an adequate remedy existed at law.

¶ 15 Next, Appellant argues that the trial court improperly determined that injunctive relief would disproportionately harm Appellee. As stated supra, a trial court will not grant a preliminary injunction where greater injury will occur from granting the injunction rather than from refusing it. *Cappiello,* 672 A.2d at 1376. In the instant case, the trial court found that the losses Appellee sustained in 1998 ($98,280) and in 1999 ($108,846) coupled with the anticipated losses in 2000 ($121,906) demonstrate a disproportionate harm to Appellee were it forced to re-open. In addition, the trial court pointed to the inordinate cost to outfit, re-stock and re-employ the premises in light of Appellee's January 2000 departure. Appellee esti-

---

**3.** Unfortunately for Appellant, this explanation does not endear potential tenants to a landlord.

mates that these costs alone would average $272,913.

¶ 16 Unlike the trial court, we do not find that greater injury will occur if the injunction is granted. Appellant has suffered real and immeasurable harms to its credibility with tenants and to its ability to lease retail units. Furthermore, if the injunction is not granted, Appellant will lose the ability to enforce what it considers the "deal breaking" provision in all of its leases that requires tenants to operate their stores. *Id.* at 20. In contrast, Appellee faces the prospect of continuing a lease agreement where it suffered losses in only two of the eight years it operated. Any projected losses, in 2000 and beyond, are purely speculative.[4]

¶ 17 Moreover, any losses sustained by Appellee to re-open the store would result from their own desertion. Appellee voluntarily entered into a binding legal contract that contained a use and default provision. Appellant reminded Appellee of such in its January 10, 2000 correspondence. In the face of this obligation, Appellee decided to close its store and to risk the cost of re-opening. As Appellee's obligations extend in times of poor profit and when Appellee no longer cares for the agreement's terms, we will not reward Appellee for this gamble. Therefore, we find the trial court abused its discretion when it found the injunction disproportionately harmful to Appellee.

¶ 18 Order reversed and remanded to the trial court for proceedings consistent with this Opinion. Jurisdiction relinquished.

4. This is especially true in light of Appellee's departure at the onset of fiscal year 2000.