397 A.2d 1214

McKNIGHT–SEIBERT SHOPPING CENTER, INC.

v.

NATIONAL TEA CO., t/d/b/a Loblaw Food Stores, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 24, 1978.

Decided Feb. 15, 1979.

Reargument Denied April 3, 1979.

Gerald C. Paris, Pittsburgh, for appellant.

Guy L. Warman, Pittsburgh, for appellee.

Before CERCONE, WIEAND, and HOFFMAN, JJ.

WIEAND, Judge:

This is a dispute between parties to a shopping center lease. Following trial without jury, the trial court concluded that the tenant, National Tea Co., hereinafter "Lessee", had breached its lease agreement and thereafter withheld possession of the demised premises wrongfully. Damages, measured by a fair rental value determined to be in excess of the rental required by the lease, were awarded to McKnight-Seibert Shopping Center, Inc., hereinafter "Lessor". Lessee's exceptions were dismissed, and judgment was entered in favor of Lessor and against Lessee for $246,-106.50. Lessee appealed.[1]

The subject of the lease was Storeroom No. 7, the largest storeroom in a strip type, neighborhood shopping center developed by Lessor in Ross Township, Allegheny County.

[1] In deciding this appeal we have been the beneficiaries of excellent briefs by counsel and a thorough opinion by the trial judge.

The lease, executed on or about April 1, 1956, provided for a fixed monthly rental of $2,300. The initial term was for 12 years, but the lease contained options permitting Lessee to renew for two additional terms of 5 years each. Lessee, a national chain, continued to maintain and operate a supermarket until August 5, 1972, when financial reverses caused it to close all stores in its chain. Before closing its stores, Lessee had negotiated a preliminary agreement with Fox Grocery Company for the purchase of Lessee's chain and the assignment of many existing leases, including the lease for Lessor's store. Lessor was notified of the intended assignment of the lease and the temporary closing of Lessee's supermarket to achieve the transfer. Lessor caused Lessee to be notified on August 9, 1972 that a cessation of operations was a default in the terms of the lease and demanded that the store be reopened within ten days or the lease would be forfeited.

Lessee's final settlement with Fox Grocery Company, scheduled for August 8, 1972, came under attack from another source. At the suit of Local 590 of the Amalgamated Meat Cutters and Butcher Workmen of North America, the bargaining representative for Lessee's meat department employees, the United States District Court for the Western District of Pennsylvania issued an order which, inter alia, enjoined Lessee, "pending final and binding arbitration . . . from consummating any contract for the sale of the stores covered by the labor agreement with [the union] which does not contain a clause making said contract binding" upon the purchaser. Whether Lessee's sale of its chain of stores without incorporating its collective bargaining agreement with the union constituted an unfair labor practice was subsequently submitted to arbitration and, on November 28, 1972, was decided in favor of Lessee. The sale of its chain to Fox Grocery Company, including an assignment of the McKnight-Seibert Shopping Center lease, was consummated on December 18, 1972.

Meanwhile, the store remained closed, and on August 31, 1972, Lessor notified Lessee that the lease was in default

and demanded possession of the demised premises. Lessee rejected the demand. It tendered all monthly rentals as and when they came due and continued to use the storeroom for storage purposes. Lessor rejected the rental payments and commenced the instant action in ejectment to recover possession.

After December 18, 1972, Fox Grocery Company went into possession of the demised premises and resumed the operation of a supermarket. It, too, tendered faithfully the monthly rental payments required by the lease, but Lessor refused to accept them. In December, 1975, Lessor and Fox Grocery Company agreed to terminate the lease, and possession of the demised premises was surrendered to Lessor. Although this rendered moot the ejectment action's claim for possession, trial went ahead on Lessor's claim for money damages by virtue of the allegedly wrongful retention of possession by Lessee and its assignee.

Lessor argued and the trial court was persuaded that the temporary closing of Lessee's supermarket constituted a violation of the third paragraph of the written lease. This paragraph provided as follows:

> "It is further understood and agreed that the Lessee shall use the demised premises  .   .   .   for the purpose of storing, preparing, displaying and selling beer, ale and wines and household, food, personal and incidental supplies, and it shall have the privilege of assigning, transferring and/or subleasing the whole or any part of the demised premises for the whole or any part of the term hereof, providing, however, that it shall remain liable for the rental to be paid thereunder, in the event of such assigning, transferring and/or subleasing."

Lessor argues that this covenant required Lessee to use the premises continuously for the purpose of operating a supermarket. Lessee contends, rather, that the provision was intended as a use clause prohibiting noncomplying uses and not requiring continuous operation. Additionally, it is argued, the express authorization to assign or transfer the lease must have contemplated by implication, if not express-

ly, a reasonable closing of the store to accommodate the mechanics of assigning the lease and transferring possession of the demised premises.

■ The applicable rule of law was set forth in *Dickey v. Philadelphia Minit-Man Corporation*, 377 Pa. 549, 552, 105 A.2d 580, 581 (1954), as follows: "Generally speaking, a provision in a lease that the premises are to be used only for a certain prescribed purpose imports no obligation on the part of the lessee to use or continue to use the premises for that purpose; such a provision is a covenant against a noncomplying use, not a covenant to use." The lease there required the Lessee to occupy the demised premises "in the business of washing and cleaning automobiles within the scope of the business of the Philadelphia Minit-Man Corporation, . . . and for no other purpose."

The general rule was subsequently followed uniformly by trial courts in this state. In *Tulip Realty Co. v. City Products Corporation*, 27 D. & C.2d 629 (C.P.Phila.1961), the lessor, who was the owner and developer of a shopping center, sued in equity to compel a variety store, which was one of the tenants, to remain open. The clause of the lease relied upon required the tenant "to use and keep the said premises for the retail sale, storage or display of goods, wares and merchandise commonly sold in retail variety stores in the Philadelphia area . . . and for no other purpose whatsoever." The Court refused to find an implied covenant to operate the store continuously. "This provision," the Court concluded, "was included to assure plaintiff that a variety store and no other type of store would be operated by defendant." Id. at 631.

In *Bosacco v. Sherman*, 51 D. & C.2d 211 (C.P.Del.1970), the lessee "agreed to occupy the leased premises as a franchised Rambler automobile dealer." After termination of the Rambler franchise the tenant remained in possession and continued to pay rent, which the landlord accepted for eight months. The occupancy clause was held to impose no obligation on the tenant to continue to use the premises for purposes of conducting a Rambler franchise.

A similar interpretation is supported in the instant case by the fact that the lease calls for a fixed rental rather than one which depends on Lessee's sales or profits. The same construction is also suggested by the absence from the lease of a provision mandating continuous operation of the supermarket or prescribing the hours and days during which the store shall remain open. Leases for some of the other stores in Lessor's shopping center do contain continuous operation clauses. The absence of such a requirement in the instant lease, therefore, is not without significance in determining the parties' intent. See: *Tulip Realty Co. v. City Products Corporation*, supra, at 632. It is also significant that in 1956, when this lease was written, the decision in *Dickey* was unchallenged and represented a clear and unequivocal pronouncement of law by the Supreme Court. Presumably the parties were familiar with the Supreme Court's interpretation of use clauses and contracted in reliance thereon. To change the rule of construction now and thereby alter the clear intendment of the clause when written would defeat the manifest intent of the parties.

Lessor contends that the clause mandating that Lessee "shall use the demised premises" must be interpreted from the viewpoint of one who owns and develops a shopping center. Lessee was the "key tenant," it is argued, and both Lessor and satellite shops relied upon an open and continuously functioning supermarket to attract pedestrian traffic. Because of this "economic interdependence" among Lessor and the tenants of the shopping center, we are urged to find an implied covenant requiring Lessee to remain in continuous operation. In support of this position Lessor cites decisions of the Supreme Court of New Jersey in *Ingannamorte v. Kings Super Markets, Inc.*, 55 N.J. 223, 260 A.2d 841 (1970) and *Tooley's Truck Stop, Inc. v. Chrisanthopouls*, 55 N.J. 231, 260 A.2d 845 (1970). In both of these cases, however, there had been a permanent cessation of business by the tenant, and the owner was seeking an order compelling either a re-opening or a surrender of possession.

Lessor's argument is not lacking in appeal. A clause that a shopping center tenant "shall use the demised premises . . . for the purpose of . . . displaying and selling [merchandise]" probably does not contemplate a permanently idle store front. This argument, however, is not applicable to the present case. Whether the use clause in this lease speaks to a permanently idle store is not the issue now before this Court. Rather, we are called upon to determine whether the mandate of the lease to use the premises for displaying and selling products was violated by a temporary cessation of business to accommodate an authorized, bona fide assignment of the lease and sale of Lessee's business. Admittedly, the closing of the store continued for a period in excess of Lessee's expectations, but this delay was caused primarily by events beyond Lessee's power to control. The restraining order entered against Lessee by a United States District Court on the one hand, and the unwillingness of the assignee to consider a transfer which required an acceptance of Lessee's collective bargaining agreement on the other, made consummation of the transaction impossible. For Lessee to keep its store continuously in operation under the circumstances, despite the prospect of increased financial losses, would have been unreasonable. In the absence of a specific covenant to the contrary, we should not impose so onerous a burden. We conclude, therefore, that Lessee's temporary cessation of business was neither unreasonable nor in violation of the terms of its lease.

Because Lessee was not in default, Lessor could not terminate the lease and recover possession of the demised premises. It follows that it cannot recover damages determined by the fair rental value of the premises. The only rent which Lessor is entitled to recover is that rent which is established by the lease. This includes the sum of $2,300 per month from September, 1972 to December, 1975, plus parking lot maintenance expenses. Because the evidence demonstrates timely tenders of such sums as they became due, Lessor is not entitled to add interest to the amount recovera-

ble. See: *Jones v. Farquhar*, 186 Pa. 386, 397 (1898); *Delaware Insurance Co. v. Delaunie*, 3 Binn. 295, 301 (1811); *Niland v. Gill*, 99 Pa.Super.Ct. 107, 111 (1930); *Bendix Aviation Corp. v. Glass*, 81 F.Supp. 645, 647 (E.D.Pa.1948).

The judgment is reversed and the case is remanded for entry of judgment consistent with the foregoing opinion.