546 A.2d 676

Maurice SLATER and Peter Kanton, T/A Bloomsburg Shopping Center Associates, a Partnership, Appellants,

v.

PEARLE VISION CENTER, INC.

Superior Court of Pennsylvania.

Argued April 5, 1988.

Filed Aug. 12, 1988.

Robert A. Schwartz, Bloomsburg, for appellants.

Thomas B. Schmidt, III, Harrisburg, for appellee.

Before WIEAND, McEWEN and BECK, JJ.

BECK, Judge:

This is a commercial lease dispute between Maurice Slater and Peter Kanton, t/a Bloomsburg Shopping Center, Associates (the "Shopping Center") and Pearle Vision Center, Inc. ("Pearle"). Appellant Shopping Center is the lessor and appellee Pearle is the tenant under a lease of premises located in Shopping Center's strip shopping mall. Although Pearle has paid the rent under the lease, it has never occupied the leased premises. Apparently because of Shopping Center's concern that the presence of a vacant store would damage the business of the shopping mall as a

whole, in August 1986 Shopping Center filed a complaint in equity seeking an injunction requiring Pearle to occupy and use the premises.

Pearle filed preliminary objections in the nature of a demurrer. Pearle basically alleged that Shopping Center had failed to state a claim for breach of either an express or implied obligation to occupy and use the premises and indeed could not since the lease contains none. Pearle also alleged that Shopping Center had an adequate remedy at law and had no standing to claim relief on behalf of other tenants in the mall.

The trial court sustained Pearle's preliminary objection on the ground that the lease does not expressly obligate Pearle to occupy and use the premises and that as a matter of law, no such obligation could be implied. The trial court relied on *Dickey v. Philadelphia Minit–Man Corp.*, 377 Pa. 549, 105 A.2d 580 (1954) and *McKnight–Seibert Shopping Center, Inc. v. National Tea Co.*, 263 Pa.Super. 292, 397 A.2d 1214 (1979). The court did not decide the remaining preliminary objections.

We reverse and remand because we find that the complaint, which incorporates the lease in full, is sufficient, albeit minimally, to state a claim for relief based on an implied obligation of Pearle to occupy the premises.

When reviewing preliminary objections in the nature of a demurrer, the question is whether, assuming the facts averred in the complaint to be true, the law is clear that no recovery is permitted. *Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 267 A.2d 867 (1970). A demurrer admits every well-pleaded fact and all inferences reasonably deducible therefrom. *Pike County Hotels, Corp. v. Kiefer*, 262 Pa.Super. 126, 396 A.2d 677 (1978). Since a court should be reluctant to grant a demurrer except in the clearest of cases, a demurrer should not be granted where it appears that the plaintiff could cure any defect in the complaint by amendment. *Tide Water Associated Oil Co. v. Kay*, 168 Pa.Super. 263, 77 A.2d 754 (1951) (quoting *Holladay v. Fidler*, 158 Pa.Super. 100, 43 A.2d 919

(1945)).  *See also Otto v. American Mutual Insur. Co.*, 482 Pa. 202, 393 A.2d 450 (1978).

■ Shopping Center argues that the lease contains both an express and an implied requirement that Pearle occupy the premises.  The express requirement is alleged to be found in Section 10 of the lease, which states:

A. Tenant covenants and agrees that it shall use the Premises solely as a "Pearle Vision Center" or such other name as is used by the other Tenant's businesses within the State of Pennsylvania for the retail sale and repair of eyeglasses, lenses and other optical merchandise and optical services, and eye examinations and lens grinding and preparation and for no other purpose. . . .

The quoted language on its face would appear to impose an obligation on Pearle to occupy the premises and to use it as a vision center.  However, Pennsylvania case law requires us to interpret such language in commercial leases to mean only that no use other than the use specified in the lease is permitted.  The language does not address the question of the lessee's duty to occupy the premises.

In the seminal case of *Dickey v. Philadelphia Minit–Man Corp.*, 377 Pa. 549, 105 A.2d 580 (1954), the lease provided that the leased premises were to be occupied by the lessee in the business of washing and cleaning automobiles and for no other purpose.  *Id.*, 377 Pa. at 551, 105 A.2d at 580.  The lease also provided for rent based on a percentage of gross sales, with a fixed minimum annual rental.  The defendant tenant occupied and used the premises for a number of years in accordance with the lease, but then limited its business to waxing cars and largely eliminated the car washing aspect of its business.

The lessor sought to eject the defendant, contending that it was in breach of the lease.  The Supreme Court affirmed the trial court's grant of a demurrer to the landlord's complaint.  It stated the issue as follows:

. . . [w]hether there was any implied obligation on the part of the lessee to continue to conduct the business on the

premises of washing and cleaning cars if its failure to do so resulted in a diminution of rental payable to the lessor. *Id.*, 377 Pa. at 552, 105 A.2d at 581.

The lessor argued that in a lease where the rental is based upon gross sales, there is an implied obligation of the tenant to continue the business on the premises to the fullest extent possible. The Court rejected this argument, finding that the tenant's decision to change its business was made in good faith and in the exercise of legitimate business judgment and was not forbidden by any implied term of the lease. Interestingly, in so holding, the Court specifically distinguished a Louisiana case where a tenant had completely vacated the leased premises and conducted its business elsewhere. *Id.*, 377 Pa. at 555, 105 A.2d at 582 (citing *Selber Bros. Inc. v. Newstadt's Shoe Stores*, 194 La. 654, 194 So. 579 (1940); 203 La. 316, 14 So.2d 10 (1943)).

Thus, the holding of *Dickey* would appear to be that a use covenant like that presented here cannot be read as an express requirement that the tenant use the premises for the precise permitted business purpose. Moreover, *Dickey* holds that there is no implied obligation that the tenant under a percentage lease refrain from conducting its business in good faith and in accordance with sound business judgment simply because doing so may decrease the rent payable.

More pertinent to the instant case is the fact that *Dickey* specifically does not address a situation where the tenant conducts no business on the leased premises. It also does not address a lease for premises which are part of a strip of stores where the economic health of each store may be dependent on the others.

Certain of these considerations were addressed, however, in *McKnight–Seibert Shopping Center, Inc. v. National Tea Co.*, 263 Pa.Super. 292, 397 A.2d 1214 (1979). In *McKnight*, the lessor of a shopping center brought an action for ejectment of the tenant, a food market operator, and its assignee and for damages for wrongful retention of the premises. The lease contained a use provision similar to

that involved herein and a fixed rental provision. When the tenant experienced financial difficulties, it attempted to assign the lease, which was permitted by the lease, and notified the lessor that it would close the store temporarily to allow for transfer to the assignee. The temporary closing lasted longer than contemplated due to labor difficulties of the tenant, who paid the fixed monthly rental throughout. Eventually, possession of the premises was surrendered to the lessor, but the claim for damages for wrongful retention survived.

The *McKnight* court recognized the general rule expressed in *Dickey* regarding the limited meaning of a use clause. However, it also recognized that "[a] clause that a shopping center tenant 'shall use the demised premises ... for the purpose of ... displaying and selling [merchandise]' probably does not contemplate a permanently idle store front." *Id.*, 263 Pa.Superior Ct. at 298, 397 A.2d at 1217. On the other hand, the court noted that the absence of provisions like a percentage rental clause, a continuous operations clause or a clause mandating that the store be open during certain hours would indicate that there was no obligation of continuous use.

Since the only issue before the *McKnight* court was whether the temporary cessation of the tenant's business to accommodate a legitimate assignment, lengthened due to circumstances beyond the tenant's control, was wrongful and in breach of the lease, the court did not specifically hold as to whether permanent vacancy of a store might constitute a breach of the lease. The court simply held that under the facts presented, a temporary vacancy did not constitute a breach of the lease. *Id.*, 263 Pa.Superior Ct. at 298, 397 A.2d at 1218.

The trial court in the instant matter found *Dickey* and *McKnight* controlling and read them as mandating the dismissal of plaintiff's complaint. As the foregoing discussion of these cases indicates, we do not consider them completely dispositive in this case. Although we recognize that *Dickey* precludes our finding that the use provision

requires that the tenant actually use the premises for the precise permitted use, and thus precludes our accepting Shopping Center's argument that this provision alone is an express imposition of a use requirement on Pearle, that does not conclude our inquiry. Shopping Center also argues that in consideration of all of the circumstances of this case, including consideration of all of the provisions of the lease, we should find that it has stated a claim for relief based on an implied obligation to occupy and use the premises. Neither *Dickey* nor *McKnight* precludes such a claim since neither of those cases address the specific situation presented here, i.e. a completely vacant store front in an interdependent shopping mall where the lease itself contains provisions other than the use clause from which an obligation to use and occupy might be implied.

█ Since there is no other directly controlling Pennsylvania precedent, we must necessarily rely on more general principles of lease construction in our analysis of this issue. As our Supreme Court has recently reiterated, "a lease is in the nature of a contract and is controlled by principles of contract law." *Cimina v. Bronich,* 517 Pa. 378, 383, 537 A.2d 1355, 1357 (1988). One such principle of contract law applicable to this case is sometimes called the doctrine of necessary implication, which has been described as follows:

> In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.

*Frickert v. Deiter Bros. Fuel Co., Inc.,* 464 Pa. 596, 347 A.2d 701 (1975) (Pomeroy, J., concurring) (quoting *D.B Van Campen Corp. v. Building and Const. Trades Council of Phila.,* 202 Pa.Super. 118, 122, 195 A.2d 134, 136 (1963)). Thus, where it is clear that an obligation is within the contemplation of the parties at the time of contracting or is necessary to carry out their intentions, the court will imply

it. *Gallagher v. Upper Darby Township*, 114 Pa.Commw. 463, 539 A.2d 463, 467 (1988). This is true even where the contract itself is not ambiguous. *Id.; Frickert, supra.* Since the doctrine of necessary implication serves not to instruct the court as to which of two possible interpretations of a contract should be adopted, but rather to allow the court to enforce the clear intentions of the parties and avoid injustice, the court does not need to find an ambiguity before it will employ the doctrine.

■ Applying this doctrine to the case at bar, we find ample evidence in this lease that these parties may well have contemplated and intended that Pearle was obligated to occupy and use the premises. For example, sub-paragraph 9(E) of the lease provides that the tenant agrees to "open the Premises for business to the public not later than ninety (90) days after Landlord's approval of Tenant's plans and specifications." Although we recognize that Shopping Center's complaint does not specifically allege when or if it ever approved Pearle's "plans and specifications", thus triggering this provision, the complaint does allege that Pearle "failed to open the premises and utilize it in accordance with" this provision. Although admittedly unclear, the lack of specificity in the complaint on this point should not herald its demise. This is precisely the genre of pleading deficiency that may often be cured by amendment and that should not, therefore, constitute grounds for dismissal.

Moreover, we find that there are other provisions in the lease that suggest that actual occupancy and use of the premises by Pearle was in the contemplation of the parties when they executed the lease. Section 10(B) states that the tenant agrees "that it will conduct its business in the entire Premises." Section 30 includes "abandonment" as an Event of Default and contains the following noteworthy exception:

Notwithstanding anything to the contrary herein, Tenant may allow the demised premises to be vacant for a period not exceeding sixty (60) days, provided Landlord is given not less than ninety (90) days written notice that such

> vacancy will occur: said vacancy being necessary due to repairs or remodeling of the demised premises or transfer of possession to a franchisee or assignee pursuant to the terms of this lease.

This exception appears in type that differs from the body of the lease, which otherwise appears to be largely based on a standard form, thus creating at least the suggestion that this provision was a separately negotiated term. The necessary implication of this provision, which severely circumscribes Pearle's ability to leave the premises vacant, is that except under the circumstances specifically outlined, Pearle *cannot* allow the premises to be vacant.

Finally, the lease contains references to the obligations of Pearle vis-a-vis the viability of the shopping mall as a whole. The "affirmative obligations" of Pearle set forth in Section 20(A) refer to Pearle's obligation to keep the premises in a manner consistent with the general character of the shopping mall and to refrain from any action or practice that "may damage, mar or deface the Premises or any other part of the Shopping Center."

In the face of such provisions, we cannot agree with the trial court's conclusion, based only on the complaint and the *Dickey* and *McKnight* decisions, that no implied-in-fact obligation to occupy and use the premises can be found as a matter of law. We note that a similar conclusion has been reached in cases involving similar facts decided in other jurisdictions. For example, in *Ingannamorte v. Kings Super Markets, Inc.*, 55 N.J. 223, 260 A.2d 841 (1970), the Supreme Court of New Jersey was confronted with a dispute between a shopping center lessor and the lessee of a supermarket in the shopping center. The lessee operated a supermarket at the leased premises for several years but then vacated the premises and refused to resume operations. The lease contained a use clause stating that the premises were to be used and operated only as a supermarket and provided for a fixed rental. The lessor sued for a judgment for possession.

Although the *Ingannamorte* Court recognized prior New Jersey decisions in which use clauses had been held to prohibit certain uses but not to mandate any permitted use, it distinguished such cases from the one before it as follows:

> But these cases and others like them, did not involve the precise use and occupancy language in the lease before us and, much more to the point, did not involve a situation where, as here, there were interdependent economic units and the landlord had an obvious interest in the continued active operation of the leased premises far beyond the mere payment of the fixed monthly rental.

*Id.* at 227, 260 A.2d at 843. Thus, the Court affirmed the trial court's order granting judgment for possession to the lessor unless the lessee resumed operations within thirty days. *See also Fifth Avenue Shopping Center, Inc. v. Grand Union Co.,* 491 F.Supp. 77 (N.D.Ga.1980) (lessee's refusal to operate premises in shopping center as food market may be breach of lease where lease is a percentage lease with an insubstantial minimum fixed rental; other circumstances like position of premises in shopping center were also considered relevant).

These cases further buttress our conclusion that in construing the lease to ascertain what obligations respecting use and occupancy it imposes on Pearle, and thus in ascertaining the intentions of the parties to the lease, we must construe the lease as a whole in light of the circumstances surrounding its execution. Having done so, we are convinced that Shopping Center has pleaded a minimally sufficient claim for relief, perhaps capable of further support through an amended pleading, based on an implied obligation to occupy and use. In the instant case, the lease is not completely silent on the tenant's duty to occupy. If it were, we would conclude that the tenant had no duty to occupy because the landlord failed to include such a condition in the lease. Here, several provisions on the lease can arguably lead to the conclusion that the parties intended that Pearle would occupy the premises.

The order of the trial court granting Pearle's preliminary objection on the ground that as a matter of law, Pearle has no implied obligation to occupy and use the premises, is reversed. The matter is remanded for consideration of Pearle's remaining preliminary objections and for further proceedings consistent with this Opinion. Jurisdiction relinquished.