**AMERIKOHL MINING, INC., Appellant,**

v.

**MOUNT PLEASANT TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 1998.
Decided March 11, 1999.

Douglas G. Linn, II, Butler, for appellant.

Leslie J. Mlakar, Greensburg, for appellee.

Before FRIEDMAN, J., LEADBETTER, J., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

Amerikohl Mining, Inc. (Amerikohl) appeals from an order of the Court of Common Pleas of Westmoreland County (trial court) declaring that a January 24, 1996 Settlement Agreement between Amerikohl and Mount Pleasant Township (Township) is applicable to all of Amerikohl's present and future mining activities. We reverse.

In August 1995, the Township adopted Ordinance No. 112 (Ordinance), which prohibited nuisances on private or public property in the Township. Section II(7) of the Ordinance prohibits

> [o]perating or to permit the operation of tools or equipment used in drilling construction, excavation, demolition work or earth moving activities between the hours of 10:00 P.M. and 6:00 A.M., when the sound therefrom creates a noise disturbance, except for emergency work of utility companies or by special variances obtained from the Township.

(R.R. at 142a.) The purpose of section II(7) of the Ordinance is to eliminate or reduce noise during nighttime hours.

In October 1995, Amerikohl filed a civil action against the Township, challenging the validity of Section II(7) of the Ordinance and its applicability to Amerikohl's surface coal mining operations in the Township. To settle the dispute, Amerikohl and the Township entered into a Settlement Agreement, dated January 24, 1996. At the time Amerikohl entered into the Settlement Agreement, Amerikohl was operating two coal mines in the Township, the Leon mine and the Aultman

mine. Under the Settlement Agreement, the Township agreed to grant a variance to Amerikohl pursuant to section II(7) of the Ordinance, subject to certain conditions. Condition 2(a) of the Settlement Agreement provides:

Amerikohl's normal hours of operation shall be from 6:00 a.m. to 4:00 p.m. (first shift) and 4:00 p.m. to 2:00 a.m. (second shift). Provided, however, from the first day of April to the last day of September Amerikohl will not operate its mining operations after 11:00 p.m.. Coal hauling trucks will be on the site no sooner than 6:00 a.m. and will depart the site no later than 4:00 p.m.. Provided, further, however, notwithstanding any time requirement set forth in this paragraph..., the within described time limitations may be modified by Amerikohl if utility shipping schedules require such modification.

(R.R. at 149a.) The Settlement Agreement makes no reference to any particular coal mining site, not the Leon site, the Aultman site or any future sites.

Within three months of executing the Settlement Agreement, Amerikohl applied for a permit with the Department of Environmental Resources (Department) to open another surface mine adjacent to the Leon site; the new mine was to be known as the Zelmore site. The Department issued the permit in August 1996. Another mine, the Ruff site, is also planned for operation. It was Amerikohl's belief that the Settlement Agreement did not apply to mining sites that were permitted subsequent to the execution of the Settlement Agreement. The Township disagreed and opined that the Settlement Agreement applied to all of Amerikohl's current and future mining operations.

On April 30, 1997, Amerikohl filed an action for declaratory judgment and equitable relief in the trial court, asking the trial court to declare that the Settlement Agreement applies only to the Leon and Aultman sites and to enjoin the Township from enforcing the Ordinance or the Settlement Agreement at other sites.[1] After a hearing, the trial court concluded that all of Amerikohl's present and future mining operations in the Township are subject to the terms of the Settlement Agreement, and, thus, Amerikohl is not entitled to equitable relief. Amerikohl now appeals to this court.[2]

Basing its argument on the fundamental principles of contract law, Amerikohl argues that the trial court erred in concluding that the Settlement Agreement applies to all of Amerikohl's present and future mining operations within the Township. We agree.

Property settlement agreements are regarded as contracts and must be considered pursuant to general rules of contract

---

1. Amerikohl also asked the trial court to declare that the Ordinance is preempted by section 17.1 of the Surface Mining Conservation and Reclamation Act, Act of May 31, 1945, P.L. 1198, *added by*, Act of October 10, 1980, P.L. 835, 52 P.S. § 1396.17a. Because of our disposition in this case, we need not address the preemption issue.

2. We reject the Township's argument that Amerikohl's appeal must be quashed because Amerikohl filed an appeal directly to this court rather than filing post-trial motions pursuant to Pa. R.C.P. 227.1. Normally, when no post-trial motions are filed following a non-jury trial, no issues are preserved for appeal to an appellate court. *Krystal Development Corporation v. Rose*, 704 A.2d 1102 (Pa.Super.1997). In an equity action, however, when the trial court enters an opinion and order instead of findings of fact and a decree nisi, as required by Pa. R.C.P. 1517(a), this court will excuse the failure to file post-trial motions. *Sasinoski v. Cannon*, 696 A.2d 267 (Pa.Cmwlth.1997) (indicating that when an order

is not labeled a decree *nisi* and gives no indication that it is other than a final order, appeal should not be quashed for failure to file post-trial motions); *Trinity Lutheran Evangelical Church v. May*, 112 Pa.Cmwlth. 557, 537 A.2d 38 (1988) (indicating that when an order neither comports with the requirements of Pa. R.C.P. 1517 nor contains suggestions that exceptions must be filed in order to preserve a right of appeal, the failure to file exceptions will be excused). Because in this equity action the trial court filed an opinion and order rather than findings of fact and a decree nisi, we must excuse Amerikohl's failure to file post-trial motions and proceed to the merits of this appeal.

Our scope of review of a final decree in equity is limited. *Shippenville–Elk Township Volunteer Fire Department v. Ladies Auxiliary of the Shippenville–Elk Township Volunteer Fire Department*, 680 A.2d 923 (Pa.Cmwlth.1996), *appeal denied*, 547 Pa. 720, 688 A.2d 174 (1997). The decree will not be disturbed unless it is not supported by the evidence or is demonstrably capricious. *Id.*

interpretation. *Krizovensky v. Krizovensky*, 425 Pa.Super. 204, 624 A.2d 638, *appeal denied*, 536 Pa. 626, 637 A.2d 287 (1993). The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties. *Lower Frederick Township v. Clemmer*, 518 Pa. 313, 543 A.2d 502 (1988). Our courts recognize that

> [i]t is firmly settled that the intent of the parties to a written contract is contained in the writing itself. When the words of a contract are clear and unambiguous, the intent is to be found only in the express language of the agreement. Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract. Where the contract terms are ambiguous and susceptible of more than one reasonable interpretation, however, the court is free to receive extrinsic evidence, *i.e.*, parol evidence, to resolve the ambiguity.

*Krizovensky*, 624 A.2d at 642 (citations omitted). We now apply these principles to the Settlement Agreement.

Amerikohl first argues that, by its express terms, the Settlement Agreement unambiguously applies only to the Leon and Aultman mines, the only mine sites in operation at the time the Settlement Agreement was executed. In making this argument, Amerikohl contends: (1) the Settlement Agreement is drafted in the present tense,[3] which is indicative of Amerikohl and the Township's intent

to apply the Settlement Agreement only to mining operations which existed at the time of execution; (2) the Settlement Agreement refers to mining operations at "the site,"[4] and the Leon and Aultman mines were the only mine sites in operation at the time the Settlement Agreement was executed; and (3) the Settlement Agreement contains no express language referring to any future mine sites. Contrary to Amerikohl's argument, the Township asserts that the express terms of the Settlement Agreement indicate that it applies to all of Amerikohl's mining operations, including future mine sites, because the Settlement Agreement is drafted in the future tense.[5]

 After extensive review of the express terms of the Settlement Agreement, we are unable to determine whether Amerikohl and the Township intended the Settlement Agreement to apply only to the Leon and Aultman mines, or to all of Amerikohl's presently existing and future mining operations in the Township. We note that the Settlement Agreement does not refer expressly to any particular coal mining site; we can only speculate as to which sites the parties intended to have the Settlement Agreement apply. In short, because the Settlement Agreement, as written, is capable of more than one reasonable interpretation, we cannot rely on it alone to resolve the issue before us; instead, we must consider extrinsic evidence to ascertain the parties' intent here. *Krizovensky; see also Lower Freder-*

---

**3.** Amerikohl points to the following "present tense" language in the Settlement Agreement: "WHEREAS, Amerikohl *is conducting* surface mining operations on or in certain parcels of land situated in the Township . . . . . " (R.R. at 148a–49a)(emphasis added).

**4.** Amerikohl points to the following "site specific" language in the Settlement Agreement: (1) "Coal hauling trucks will be on *the site* no sooner than 6:00 a.m. . . . . " (R.R. at 149a)(emphasis added); and (2) "Except in emergencies or compelling situations, Amerikohl will refrain from operating on *the site* on Sundays . . . . " (R.R. at 150a)(emphasis added).

**5.** The Township points to the following "future tense" language in the Settlement Agreement: (1) "The Township agrees that a conditional variance to Amerikohl . . . *shall be* granted and is hereby granted subject to the conditions herein-

after set forth", (R.R. at 149a)(emphasis added); (2) "Amerikohl's normal hours of operation *shall be* from 6:00 a.m. to 4:00 p.m. . . . [F]rom the first day of April to the last day of September Amerikohl *will* not operate its mining operations after 11:00 p.m. Coal hauling trucks *will* be on the site no sooner than 6:00 a.m. and *will* depart the site no later than 4:00 pm.", (R.R. at 149a)(emphasis added); (3) "Strobe lights *will* operate in the evening hours", (R.R. at 149a)(emphasis added); (4) "All equipment *will* be regularly inspected" (R.R. at 149a)(emphasis added); (5) "The existing access road . . . *will* be relocated", (R.R. at 149a–50a)(emphasis added); (6) "Amerikohl *will* refrain from operating on the site on Sundays and/or legal holidays", (R.R. at 150a)(emphasis added); and (7) "Upon execution of the within Agreement, the same shall be filed . . . and Amerikohl *will* cause to have the action filed by it against the Township . . . discontinued", (R.R. at 150a)(emphasis added).

*ick Township* (noting that in ascertaining the intent of the parties to a contract, it is proper to consider the surrounding circumstances of the transaction and the purpose of the agreement). Unfortunately, the parties present conflicting accounts of such evidence.

The testimony presented by both Amerikohl and the Township at the hearing before the trial court indicates that, at the time Amerikohl and the Township negotiated the terms of the Settlement Agreement, no discussions took place as to whether the Settlement Agreement would apply only to the Leon and Aultman mines, or whether it would apply to future mining sites as well. Nevertheless, John M. Stilley, president of Amerikohl, testified that, despite the absence of such discussion prior to the execution of the Settlement Agreement, "it was very clear to me that this [S]ettlement [A]greement was specific to the sites that were permitted and being mined as of the date of the agreement." (R.R. at 87a.) W. David Maxwell, vice-president of Amerikohl, provided similar testimony when he stated, "my understanding was clear that [the Settlement Agreement] would apply to the Leon and Aultman strips." (R.R. at 113a.) To the contrary, Raymond A. Mears, the Township's supervisor, testified that even though no one from the Township discussed future mine sites with Amerikohl at the time of negotiations, it was his belief that "any operations by Amerikohl...should be governed by the...[Settlement] [A]greement." (R.R. at 128a.)

As further evidence that the parties intended for the Settlement Agreement to apply only to the Leon and Aultman mines, Amerikohl presented testimony that the Settlement Agreement actually resulted from negotiations with a single landowner who lived close to Amerikohl's existing mine operations, (R.R. at 77a), and was concerned about the mining occurring near his property. Amerikohl contends that the Settlement Agreement was meant to placate this landowner's objections to a specific existing site and, thus, the Settlement Agreement was not intended to apply to future sites. To refute this evidence, the Township presented testimony that the Settlement Agreement stemmed from Amerikohl's civil action against the Township as a resolution of that dispute; the Township contends that, pursuant to the Settlement Agreement, the Township was afforded respite from mining operations during certain hours, both presently and in the future, whereas Amerikohl was granted permission to perform noisy mining operations during hours when such activity otherwise would be prohibited under the Ordinance.

Presented with the conflicting testimony at the hearing, the trial court applied the doctrine of necessary implication and concluded that the Settlement Agreement applies to all of Amerikohl's present and future mining operations in the Township. The doctrine of necessary implication is a principle of contract law which has been described as follows:

> In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.

*Slater v. Pearle Vision Center, Inc.*, 376 Pa.Super. 580, 546 A.2d 676, 679 (1988) (quoting *Frickert v. Deiter Bros. Fuel Co.*, 464 Pa. 596, 603, 347 A.2d 701, 705 (1975)). Utilizing the doctrine, the trial court implied an agreement between Amerikohl and the Township that was not provided for expressly in the Settlement Agreement "in order to carry out the purpose for which the contract was made." (Trial ct. op at 3.) The trial court reasoned, "Since the abatement of nighttime noise was the essence of the [S]ettlement [A]greement, to now limit the agreement to the two sites then in existence would injure the [T]ownship's right to receive the benefit of its bargain." (Trial ct. op. at 3.) We cannot agree with the trial court's application of the doctrine of necessary implication under the circumstances existing here.

Our courts have indicated that the doctrine of necessary implication may be applied only in limited circumstances. *Kaplan v. Cablevision of PA., Inc.*, 448 Pa.Super. 306, 671 A.2d 716, *appeal denied*, 546 Pa.

645, 683 A.2d 883 (1996). The doctrine of necessary implication serves to allow the court to enforce the clear intentions of the parties and to avoid injustice; however, it must be apparent that an obligation is within the contemplation of the parties at the time of contracting or is necessary to carry out their intentions. *Slater.* A court "may apply a missing term in a parties' contract *only* when it is necessary to prevent injustice *and* it is abundantly clear that the parties intended to be bound by such term." *Kaplan,* 671 A.2d at 720 (emphasis added). These requirements are absent here.

First, as we have previously noted, it is not "abundantly clear" that Amerikohl and the Township intended for the Settlement Agreement to apply to both the present and future mining sites in the Township. In fact, it is not at all clear that this is what the parties intended. Rather, what is clear is that neither side discussed or considered this issue prior to executing the Settlement Agreement. The conflicting evidence presented to the trial court only serves to reinforce the fact that the parties themselves were uncertain what was intended at the time they entered the Settlement Agreement.

Further, it is not apparent that justice only would be served by applying the Settlement Agreement to future mining sites. The trial court reasoned that application of the doctrine of necessary implication was needed to effectuate the essence of the Settlement Agreement, which was to abate nighttime noise in the Township. However, there is no record evidence to indicate that the Zelmore site, or any future Amerikohl mining site, will produce noise disturbing to the Township's residents. To the contrary, at the hearing before the trial court, Maxwell testified that in April 1997, Amerikohl conducted noise study tests in the vicinity of the Leon, Aultman and Zelmore sites to determine the level of noise emanating from Amerikohl's mining operations.[6] (R.R. at 105a.) Maxwell testified that, after conducting the noise study tests, Amerikohl concluded that its mining activities did not create a noise disturbance in the community because there was no significant noise difference when the mining equipment was in operation as opposed to when it was not in use.[7] (R.R. at 113a.) Based on this undisputed record evidence, we conclude that there is not substantial evidence to support the trial court's finding that applying the Settlement Agreement to future Amerikohl mining sites is necessary to serve the purpose of the Settlement Agreement by abating nighttime noise in the Township.

 Because it is not abundantly clear that the parties intended the Settlement Agreement to apply to future mining sites at the time the Settlement Agreement was executed, and because application to future sites is not necessary to serve the purpose of the Settlement Agreement or to prevent injustice, we conclude that the trial court erred in applying the doctrine of necessary implication to include an obligation not expressly set forth in the Settlement Agreement and to determine that the Settlement Agreement applies to all of Amerikohl's present and future mining operations in the Township.

Accordingly, we reverse.

Judge LEADBETTER dissents.

---

6. Amerikohl chose three sites for the noise study. Site one was located adjacent to the Aultman mine and across the street from the house of Emma Geiger, a Township resident; the site was approximately 3600 feet from where active mining operations took place. Site one was chosen at this location for the study because it was "close to a lot of the residences in that area as what our mine site would be." (R.R. at 107a.) Site two was located approximately 350 feet northeast of the Paul residence, which was approximately 2100 feet from active mining operations. Site two was chosen for the study because it was "the furthest reaches of the Zelmore site." (R.R. at 107a.) Site three was located on the Leon site, approximately 300 feet from where two active bulldozers were operating.

7. Amerikohl used both a dosimeter, a mechanical device that measures decibels and the amount of sound, and human hearing to conduct the study. Maxwell testified that at site one, no mining operations could be heard; rather, traffic, a dog barking and a frog peeping could be heard. (R.R. at 107a.) Maxwell further testified that, at site two, mining operations could be heard, in addition to nighttime frogs, rustling leaves and a passing car; Maxwell indicated that the mining noise was not overwhelming and was probably less audible than the background noises. (R.R. at 108a.)

*ORDER*

AND NOW, this 11th day of March, 1999, the order of the Court of Common Pleas of Westmoreland County, dated December 2, 1997, is hereby reversed.