# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lackawanna County | : | |
| | : | |
| v. | : | No. 132 C.D. 2021 |
| | : | ARGUED: December 13, 2021 |
| Correctional Care, Inc. and | : | |
| Edward J. Zaloga, D.O., C.P.A, | : | |
| Appellants | : | |

BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED: February 16, 2022**

Correctional Care, Inc. (CCI) and Edward J. Zaloga, D.O., C.P.A., President and Chief Medical Officer of CCI, (collectively, Appellants), appeal from the order of the Court of Common Pleas of Lackawanna County granting Lackawanna County a mandatory preliminary injunction entered against CCI and Dr. Zaloga. The injunction required CCI and Dr. Zaloga to bind tail insurance[1] coverage for a three-year term for medical malpractice claims arising from CCI's provision of health care services to inmates at the Lackawanna County Prison. Because we believe the trial court had reasonable grounds to take this action, we affirm.

---

[1] The trial court utilized the following functional definition of tail insurance: "this [c]ourt interprets the term tail insurance to mean insurance coverage afforded for medical malpractice claims made during the extended reporting period available under an existing insurance policy." (Trial Ct. Op. at 1 n.1.) Neither party disputes this definition, which is consistent with the terms of CCI's medical malpractice insurance policy, and with the general understanding of the term as it applies to the circumstances here.

From December 2009 until January 14, 2021, CCI, under a contract with the County, provided comprehensive health care services to the inmates, detainees, and prisoners at the prison. Dr. Zaloga executed all contract documents for CCI. The contract was extended at various junctures and was subject to a series of amendments and addendums. After the County secured a new provider, it informed CCI by timely notice that the contract would not be renewed.

Of relevance to this litigation, the contract required CCI to obtain insurance, including malpractice insurance, "in *amounts & terms approved by Lackawanna County*," [County Ex. A, Comprehensive Health Services Agreement "contract" at ¶ 21, Reproduced Record "R.R." at 24a (emphasis supplied)]. On September 12, 2012, the parties executed an addendum which amended Paragraph 21 of the contract to include language requiring tail insurance. Declarations in the 2012 Addendum recognized that tail insurance was a

> legitimate and necessary cost of doing business under the [contract][,] [t]he County is liable and shall pay those costs and expenses arising out of or relating to tail insurance[,] and [t]he County shall indemnify and hold harmless [CCI] from and against any liability cost[,] or expense arising out of, or relating to tail insurance.

[County Ex. B, 2012 Addendum at ¶ 1, R.R. at 29a (extraneous punctuation omitted).] The following language was added to Paragraph 21, stating in relevant part:

> [T]ail insurance . . . will always be necessary under this [contract] and . . . [the County] is liable for all costs . . . relevant to same. Cash payment relevant to tail insurance is due and owing from the County on *termination/expiration of this [contract] for any reason whatsoever* . . . . [A]ny failure to pay all those costs and expenses relevant [to] tail insurance *will result in harm*

2

> *and damage to [CCI], including irreparable harm*, and . . . injunctive relief is necessary and appropriate to compel the payment of any costs . . . should the County fail to timely do so . . . . [The] County hereby indemnifies [CCI], Dr. Zaloga, [CCI's] officers, directors, agents[,] and employees from any and all harm arising out of [the] County's failure to timely provide payment . . . .

[2012 Addendum at ¶ 2, R.R. at 30a (emphasis supplied and extraneous punctuation omitted).] This term continued in effect throughout the duration of the contract and extensions.

Unfortunately, the 2012 Addendum did not provide a specific duration for which a tail insurance policy must be obtained. This became of import when the County informed Dr. Zaloga of the termination of the contract, and the foreseen necessity of tail insurance manifested itself. At that point, the interplay between the contract and CCI's malpractice insurance policy required action by both the County (payment) and CCI (execution of documents) in order to bind a tail insurance policy. The malpractice insurance policy held by CCI contained an endorsement providing in relevant part that "[i]f the policy *is not renewed* . . . or is cancelled . . . (whether by [the insurer] or the *Named Insured* [i.e., CCI], [CCI] . . . has the right to purchase, within thirty (30) days of policy termination, an extension of the coverage." [County Ex. F, Extended Period Endorsement, R.R. at 145a (emphasis supplied).] The available tail policy reporting periods ranged from a single year to seven full years in increments of a full year, with multiples of the annual premium charged. The tail policy period was required to be both elected and paid within thirty days of the policy's termination. The tail insurance policy, once bound, could not be cancelled.

The County offered to pay for three years of tail insurance, determining this period would provide satisfactory coverage based on the two-year statute of

3

limitations[2] on medical malpractice claims, plus an additional year as advised by the County's risk management advisors. Appellants refused to obtain a tail policy for a three-year term and insisted that CCI would only bind a policy for a term of seven years. As the parties reached an impasse, the deadline to bind a tail insurance policy approached.[3] The County filed a complaint and an application for special relief in the nature of a mandatory preliminary injunction pursuant to Rule 1531(a) of the Pennsylvania Rules of Civil Procedure, Pa. R. Civ. P. 1531(a).

The trial court held a hearing on the matter and granted mandatory preliminary injunctive relief in favor of the County by order dated January 29, 2021. Appellants filed an ultimately unsuccessful emergency petition for reconsideration and stay. By order dated February 5, 2021, the trial court lifted the stay, reinstated the mandatory preliminary injunction, and amended the order to be more narrowly tailored. The amended order directed Appellants to: "**By 5:00 PM today** . . . take . . . all actions required by the insurance carrier to order and bind tail insurance coverage. The term . . . shall be for a period of [three years]." The order went on to direct the submission of a letter by Dr. Zaloga to CCI's insurance broker "directing cancellation of the current medical malpractice policy . . . **retroactive to January 14, 2021**," and instructing the broker to immediately order and bind three years of tail insurance coverage. [Trial Ct. Order of Feb. 5, 2021 (emphasis in original).] As the County had already tendered payment to the broker for a three-year tail insurance policy, the paperwork would serve to bind a policy for that term.

On February 5, 2021, the trial court also entered an opinion explaining its reasoning. The trial court did not make discrete findings of fact but noted in the

---

[2] *See* 42 Pa.C.S. § 5524(2) (providing for two-year limitation period).

[3] *See infra* note 5 and accompanying text.

4

recitation of the history of the case that the "professional liability policy [had] *expired* and the deadline to order and bind tail insurance coverage now rapidly *approache[d]*."[4]  [Trial Ct. Op. at 2, R.R. at 574a (emphasis supplied).]  The trial court also found that each requirement for the entry of a mandatory preliminary injunction was met.

On appeal, CCI raises four issues: (1) whether a mandatory preliminary injunction was supported by record evidence of immediate and irreparable harm; (2) whether a mandatory preliminary injunction was necessary to preserve the status quo; (3) whether a mandatory preliminary injunction was supported by record evidence of a clear right to relief; and (4) whether a mandatory preliminary injunction was supported by record evidence that entry of the same will not adversely affect the public interest.[5]

---

[4] This was based on the trial court's understanding of the testimony of the chief financial officer for the County that suggested that the deadline was February 14, 2021, and one version of CCI's insurance broker's testimony.  This calculation assumed a cancellation date simultaneous to the expiration of the contract on January 14, 2021 (Trial Ct. Op. at 8); the Court takes notice that counting 30 days from January 14, 2021 would result in a deadline of February *13*, 2021 (17 days remaining in January and 13 days in February totaling 30 days).  Appellants assert that the trial court's mandatory injunction itself resulted in the cancellation of the policy.

The stated end of the coverage period was February 15, 2021 at 12:01 A.M.  (County's Ex. E, Pro. Liab. Ins. Pol'y, Pro. Liab. Pol'y Decls., R.R. at 95a.)  Thus, at all events, regardless of the precise date that the policy was cancelled or would have expired, the deadline for binding a tail policy was rapidly approaching when the trial court's February 5, 2021 order issued.

[5] The County submits that the matter is now moot, because Appellants have complied with the order of the trial court—cancelling the medical malpractice policy and binding a three-year tail insurance policy.  The County argues that there are no further actions that could be taken by any court to undo these actions, including to bind another tail insurance policy.  The County notes that Appellants have not filed an affirmative matter against the County or a counterclaim to the County's complaint.

**(Footnote continued on next page…)**

CCI's arguments correspond to four of the six requirements applied to preliminary injunctions generally and mandatory preliminary injunctions in particular. Thus, it is helpful at the outset to state the appropriate standards. A petitioner seeking a preliminary injunction must establish each of six requisite showings, including in pertinent part:

> First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages . . . . Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits . . . . Sixth, and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

*Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003) (citations omitted). Further, although preliminary injunctions are "preventative in nature and designed to maintain the status quo until the rights of the parties are finally determined," mandatory injunctions—commanding performance of a positive act—are distinguished from prohibitory injunctions, which enjoin performance of an act. *Mazzie v. Com.*, 432 A.2d 985, 988 (Pa. 1981). Greater scrutiny is applied to mandatory injunctions, which should be issued more sparingly than prohibitory injunctions, and require the establishment by a petitioner to a clear

---

However, as Appellants correctly point out, the alleged facts regarding Appellants' actions after the trial court's order do not appear in the original record and may not be considered based on allegations in the County's brief. *Larson v. Diveglia*, 700 A.2d 931, 934 n.4 (Pa. 1997). Further, what remedies might be available to Appellants if they were successful is not before us. Thus, we decline to find the matter moot.

right to relief. *Id.* In addition, we evaluate these standards with the understanding that both sides accepted that a tail policy was needed and their only dispute related to the term of years.

Our standard of review on appeal when a preliminary injunction has been granted is limited to examining the record to determine if there were any apparently reasonable grounds for the action of the court below. *Wyland v. W. Shore Sch. Dist.*, 52 A.3d 572, 577 n.3 (Pa. Cmwlth. 2012). We keep in mind that an appellate court reviews an order granting or denying a preliminary injunction for an abuse of discretion. *Summit Towne Ctr.*, 828 A.2d at 1000. Under this highly deferential standard of review, an appellate court does not inquire into the merits of the controversy but examines the record "to determine if there were any apparently reasonable grounds for the action of the court below." *Id.* [quoting *Roberts v. Bd. of Dirs. of Sch. Dist.,* 341 A.2d 475, 478 (Pa. 1975)]. Only if it is plain that *no* grounds exist to support the decree, or that the rule of law relied upon was palpably erroneous or misapplied, will we interfere with the decision. *Wyland*, 52 A.3d at 577 n.3.

### Immediate and Irreparable Harm

Addressing the arguments in order, Appellants first contend that the record does not support a finding of immediate and irreparable harm, the first requirement for a preliminary injunction. The trial court found that *both* the County *and* CCI would suffer immediate and irreparable harm if a mandatory preliminary injunction were not issued.

Appellants argue that the harm suffered by the County was not immediate because the existing malpractice insurance policy had not been cancelled and the thirty-day period during which tail insurance would be bound did not start

7

until the trial court's entry of mandatory injunctive relief compelling cancellation in order to bind the tail policy. Appellants further argue that mandatory injunctive relief was not necessary because CCI was willing to procure a seven-year policy. Appellants contend in this regard that the trial court "should have refused entry of injunctive relief and allowed the County to fund the [seven]-year tail policy. Monetary damages would be available to make the [C]ounty whole in such case." (Appellants' Br. at 17.)

We find these arguments unavailing. The trial court reasonably found that had mandatory injunctive relief not been issued, immediate and irreparable harm would have been suffered by both the County and Appellants. The trial court found that the deadline for binding tail insurance was rapidly approaching and that if the deadline passed without CCI obtaining a policy from its malpractice carrier, a tail insurance policy could not be bound. While the precise date that the insurance policy would end by cancellation or expiry was disputed, that it was ending was not. Evidence of the time available to bind a tail insurance policy adduced from CCI's insurance broker was found uncertain and unreliable, as well as contrary to the express terms of the insurance policy. (Trial Ct. Op. at 11-12.) The trial court further found that the parties would be exposed to potentially catastrophic liability were tail insurance not bound[6]—the nature of this harm as irreparable being stipulated by the parties in the 2012 Addendum. Further, Appellants have not disputed the damage which might result from *no* tail insurance being obtained; Dr. Zaloga confirmed this in his testimony regarding the "very litigious environment with prison inmates"

---

[6] An injury is regarded as irreparable if it will cause damages that can be estimated only by conjecture and not by an accurate pecuniary standard. *See Com. ex rel. Corbett v. Snyder*, 977 A.2d 28, 42 (Pa. Cmwlth. 2009) [citing *W. Penn Specialty MSO, Inc. v. Nolan*, 737 A.2d 295 (Pa. Super. 1999)].

8

(Notes of Testimony Jan. 29, 2021 at 141, R.R. at 761a). We therefore conclude that the trial court had reasonable grounds to find that immediate and irreparable harm would be suffered without the entry of mandatory relief.

**Maintenance of Status Quo**

Second, Appellants argue that the mandatory preliminary injunction entered by the trial court did not maintain the status quo, as is required for a preliminary injunction, *see Summit Towne Centre*, but "destroyed it." (Appellants' Br. at 18.) Appellants contend that the injunctive relief entered "deprives CCI of the right to lawfully operate its business, control its operations[,] and enjoy the bargained for terms of the Agreement," but instead imposed the three-year term upon CCI. (*Id.* at 19.) Appellants contend that they suffer "greater injury by the imposition of injunctive relief . . . than would be 'suffered' where injunctive relief were denied," in the form of the County binding a seven-year tail policy. (*Id.*) Appellants assert that this leaves CCI, the County, and its taxpayers "with less coverage ([four] years less) than was bargained for." (*Id.*)

Appellants' arguments regarding this issue are unpersuasive. Courts require that the relief granted must not change the *status quo ante*, or "the last peaceable and lawful uncontested status preceding the underlying controversy." *In re Milton Hershey Sch. Tr.*, 807 A.2d 324, 333 (Pa. Cmwlth. 2002). Here, that *status quo ante* was the existence of malpractice coverage protecting both parties, and the agreement *at all times* that a tail insurance policy would be bound as a necessity of doing business. The prospect that there be no tail policy at all would seem to be nothing more than a threat by Appellants to obtain their desired tail policy duration by the prospect of a ticking-timebomb of liability. It is specifically noted that the contract did not give CCI the unfettered right to "control its business

9

operations" as it pertains to determining the amount and terms of insurance, as Paragraph 21 of the contract, which the 2012 Addendum amended, specifically contemplated that those be approved by the County. Given this, we discern no abuse of discretion in the trial court's determining that mandatory injunctive relief was necessary to maintain the *status quo*.

### *Clear Right to Relief*

Third, Appellants argue that the County did not establish a clear right to relief on its claims. This implicates the requirement that a plaintiff show that it is likely to prevail on the merits which applies when a *mandatory*, as opposed to prohibitory, preliminary injunction is sought. *Mazzie*, 432 A.2d at 988.

Appellants assert that because the contract did not provide a term for the length of the tail insurance policy, there was no duty to bind a three-year policy and no breach on the part of CCI. Appellants further assert that the County did not show a likelihood of success on the merits for an action for specific performance, because the County's refusal to fund a seven-year policy demonstrates that the County was not "ready and willing to perform." (Appellants' Brief at 21). Finally, Appellants assert that the County failed to state a claim against Dr. Zaloga because he signed the contract documents on behalf of CCI only as President and Chief Medical Officer and, therefore, is not personally liable.

Here, the declarations in the 2012 Addendum itself demonstrate the parties' intention to have CCI procure tail insurance and to have the County pay for it as a necessity of doing business—what is missing is a term of years. It is abundantly clear that the parties intended that at some point there be a purchase of a policy, which necessarily would be for a finite duration. It is reasonable to conclude that *not* to order the tail policy to be bound for a specific term of years would allow

10

Appellants to unilaterally defeat the purpose for which the 2012 Addendum was made. This, in turn, would destroy both the County's and Appellants' right to the benefit for which they bargained.

Nor can we find error in the trial court's selection of a term of years. The doctrine of necessary implication is a principle of contract law which has been described as follows:

> In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.

*Amerikohl Mining, Inc. v. Mount Pleasant Twp.*, 727 A.2d 1179, 1183 (Pa. Cmwlth. 1999) [quoting *Slater v. Pearle Vision Ctr., Inc.*, 546 A.2d 676, 679 (Pa. Super. 1988)]. The doctrine of necessary implication may be applied only in limited circumstances. *Id.* The doctrine serves to allow a court to enforce the clear intentions of the parties and to avoid injustice; however, it must be apparent that an obligation is within the contemplation of the parties at the time of contracting or is necessary to carry out their intentions. *Id.* at 1184. A court "may apply a missing term in a parties' contract *only* when it is necessary to prevent injustice *and* it is abundantly clear that the parties intended to be bound by such term." *Id.* [quoting *Kaplan v. Cablevision of Pa., Inc.*, 671 A.2d 716, 720 (Pa. Super. 1996) (emphasis supplied)]. Here, the record is devoid of evidence that the parties had any common understanding as to the length of tail that was needed at the time they agreed to the 2012 Addendum. Thus, pursuant to the doctrine of necessary implication the trial court was not only authorized, but obligated, to set a term of years that would carry out the purpose of the 2012 Addendum and reasonably concluded, in light of the

two-year statute of limitations for medical malpractice, that a three-year tail would provide sufficient protection to CCI without unduly burdening the County's fisc.

Dr. Zaloga's inclusion as a party is immaterial. As President of CCI, he was capable of executing the binder for tail insurance. We view his inclusion as a party as, at most, a technical defect of pleading.

As for the argument that the County was not ready and willing because it refused to comply with Appellants' preferred term for tail insurance, we view this as devoid of merit. The County had the contractual authority to approve terms and amounts of insurance and had already tendered payment for a three-year policy to the insurer.

*Public Interest*

Finally, CCI argues that the injunctive relief ordered adversely affects the public interest by leaving the County, CCI, and taxpayers exposed to potential liability for the period of four years that otherwise would have been insured if the County had elected to pay for a seven-year tail policy.

We believe the trial court reasonably found that Appellants' willingness not to bind tail insurance altogether represented a far graver threat to the public interest by holding the coverage hostage unless they got what they wanted. We therefore find no error or abuse of discretion in the trial court's action.

In light of the foregoing, we affirm.

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

12

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lackawanna County           :
                                 :
          v.                :    No. 132 C.D. 2021
                                   :
Correctional Care, Inc. and    :
Edward J. Zaloga, D.O., C.P.A,  :
                Appellants   :

# O R D E R

AND NOW, this 16th day of February, 2022, the order of the Court of Common Pleas of Lackawanna County for a mandatory preliminary injunction in the above-captioned matter is hereby **AFFIRMED**.

<div style="margin-left: 50%;">

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

</div>